UNITED STATE BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In re: EXCEL STORAGE PRODUCTS, LP,  :   Chapter 7
             Debtor                 :   Case No. 5-10-08141

**MOTION FOR EXAMINATION OF HUNTINGTON NATIONAL BANK
UNDER RULE 2004 OF FEDERAL RULES OF BANKRUPTCY PROCEDURE**

William G. Schwab, the Trustee herein, by and through his counsel, William G. Schwab & Associates, respectfully represents to the Court that the within proceedings were commenced by the filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 27, 2010.

The Trustee further represents that an examination of Huntington National Bank is necessary to assist in the administration of the within estate and requests that Huntington National Bank produce documents and designate a representative person under Federal Rules of Civil Procedure 30(b)(6) to provide testimony in dealings involving Excel Storage Products, LP, Excel Capital Partners, LLC, Excel Capital Partners, LP, ECP Real Estate, LP, Bruce Cassidy, Sr., Bruce Cassidy, Jr., and Steve Fields, as to the following:

1. All Documents[1] relating to the policies of Huntington National Bank and its predecessor, Sky Bank, (collectively, the "Bank") as to the loan underwriting procedures and documentation as they pertain to the Debtor, or any affiliate of the Debtor as that term is defined in 11 U.S.C. § 101(2) of the Bankruptcy Code, including, but not limited to, the following entities: ECP Real Estate, LP; Excel Capital Partners, LP; Excel Capital Partners, LLC; Minova Holdings, Inc.; Tappan Real Estate Investments, LLC; Mining Systems Inc.; Excel Mining Systems, Inc.; Excel Aviation, LLC; ECP Real Estate Partners, L.P (hereinafter referred to both collectively and individually as the "Affiliates").

   a. As included herein, the term "Document" wherever used in this Motion and Order shall have the same meaning as in Rule 34(a) of the Federal Rules of Civil Procedure, in addition to the following:

   b. All electronically stored information or "ESI" includes electronic

versions of traditional paper documents, electronic records (such as electronic mail) in general use, metadata, systems data, native files, and static images.

c. "Systems data" includes any data generated by a user or a computer in connection with the operation or administration of networks, devices, or applications, which includes access controls, access logs, activity logs, router logs, security permissions, and transaction logs. This includes all systems data that may not be specifically structured for human review.

d. "Metadata" means (I) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Meta-Data is a subset of ESI.

e. "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed and/or modified. Native Files are a subset of ESI.

f. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Static Image(s) should be provided in either Tagged Image File Format (TIFF, or .TIF files) or Portable Document Format (PDF). If load files were created in the process of converting Native Files to Static Images, then the load files should be produced together with the Static Images.

2. All Documents consisting of any loan correspondence, analysis notes, reconsiderations created by any entity or individual on behalf of the Bank relating to the Bank's lending relationship with the Debtor, including but not limited to, loan officer memoranda, loan applications, correspondence, documents provided by the Debtor as part of the loan process, loan packages for submission to the loan committee, loan committee meeting minutes, board minutes and other documents evidencing the approval of loans or other credit facilities to the Debtor, commitment letters, all monthly and/or weekly reports provided to the Bank by the Debtor and/or any and all internal monthly or weekly operating reports provided to the Bank and Excel, including loan documents or delinquency summaries.

3. All Documents considered or used by the Bank in lending monies to the

2

PHIL1 1284542-1

Debtor that include or reference the Debtor, and/or any of the Debtor's Affiliates.

4. Any and all Documentation related to periodic monthly statements provided to the Bank and the reasons therefore.

5. Any and all Documents related to any loan, made by the Bank to the Debtor, including, all Documents related to pledges made by any third party on behalf of the Debtor, in favor of the Bank, including Documents related to both outstanding and previously satisfied loans and/or pledges.

6. Any and all Documents relating to the Bank's policies as to the "sweep" of the accounts of the Debtor, including any written agreements with the Debtor or affiliates that pertain to Debtors funds or loans.

7. All Documents related to any account histories of the Debtor, including but not limited to all paperwork, signature cards, account history, debits, credits, deposits, withdrawals, checks, electronic transfers, wire transfers, ATM deposits, withdrawals, and related to accounts and provided to or for the Bank.

8. Any and all Documents relating to loans, other financial transactions, communications or interactions between the Bank and W.C. Cardinal, Co., including sale, appraisal, loan closing documents, if any.

9. Any and all Documents related to the loan transactions between the Debtor and Bank, including, but not limited to any of the following Documents: (1) any notes made by any loan officers or committees relating to the decision to loan funds to the Debtor; (2) any consent or subordination agreements; (3) any fixture filings; (4) any assignments of leases and/or rents; (5) any guaranties; (6) any environmental indemnity agreements; (7) any deposit account control agreements; (8) any closing escrow documents; (9) any documents relating to any title company policies, including any pro forma title policies mortgage title insurance commitments, endorsements, title exceptions etc; (10) any certified rent rolls; (11) any estoppels; (12) any borrower organization charts obtained from the Debtor or its Affiliates; (13) a certificate of formation for the borrower certified by the secretary of state; (14) a certificate of good standing or qualification; (15) any corporate resolutions or authorizations relating to the Bank's loans; (16) any legal opinions provided to the borrower in connection with the extension of the loans; (17) any tax documentation; (18) title affidavits; (19) zoning information, including reports or permits; any UCC/ Judgment/ pending litigation/ bankruptcy /federal and state tax lien searches conducted by

the Bank; (20) any settlement statements; (21) W-9's provided to the Bank by the Debtor, (22) SNDAs; (23) PZR Reports; (24) surveys, architectural and/or engineers' reports; (25) appraisals; and /or (26) insurance policies.

10. Any and all Documents relating to the Bank's relationship with the Debtor's creditors, including the Debtor's customers, and the Bank's involvement in any of the following: (1) invoice procedures; (2) credit terms; (3) pricing structures; (4) billing procedures; (5) customer deposit procedures; and (6) determinations relating to which of the Debtor's creditors should be paid.

11. Any and all Documents relating to the Bank's direct and/or indirect relationship with the Debtor's employees, including but not limited to any Documents: (1) reflecting the Bank directly contacting the Debtor's employees; (2) correspondence or Documents relating to the termination of certain employees; (3) Documents relating to the placement of the new CFO; (4) Documentation concerning the consideration, resumes, or applications of other candidates for the CFO position; (5) documents relating to the Debtor's decision to hire the new CFO; (6) any documents related to the Bank's participation in selecting the CFO; (7) Documents related to information regarding warning given to the Debtor of an impending receivership; (8) any Documents provided to the Bank by the Debtor in aid of locating a potential purchaser for the Debtor's business (7) all documents relating to the nature of the duties delegated to former Bank employees who are now employees of any Debtor Affiliate, including but not limited to, Denis Penz and Rick Hull, (8) any relevant business records or correspondence drafted by, or at the request or direction of, Denis Penz or Rick Hull regarding the Debtor and (9) all Documents reflecting due diligence conducted before each of the loans was extended.

12. Any and all documents in the Bank's possession relating to information sent out by the Bank or the Debtor to any potentially prospective purchaser of the Debtor's assets.

13. Any and all documents in the Bank's possession relating to information sent out by W.C. Cardinal to potentially prospective purchasers for the W.C. Cardinal assets.

14. Any and all documents pertaining to appointment of federal receiver, including appraisal reports, liquidator or auctioneer reports or documents in contemplation thereof.

15. Any financial documents produced internally by the Debtor, general partnership, limited partnership or outside accountant.

It is believed that Huntington National and/or Sky Bank has documentary evidence

relevant to the furtherance of the administration of the within case which has not yet been produced, namely any and all information regarding bank accounts of the Debtor, including but not limited to, deposit records. Said information has not been provided to the Trustee.

WHEREFORE, the Trustee respectfully requests that Huntington National Bank be directed to appear for examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure on December 2, 2010 at 9:00 a.m. at a place to be mutually agreed upon by the parties for document production and copying, and, to be continued to taking testimony of a designated agent of the bank at a later date as agreed to by the parties, upon failure to agree, at the Trustee's office located at 811 Blakelsee Blvd. Drive East, Lehighton, PA. Any creditor of the Debtor may have a right to participate in the 2004 Examination.

Respectfully submitted,

**WILLIAM G. SCHWAB & ASSOCIATES:**

By:   /s/ William G. Schwab
**WILLIAM G. SCHWAB, ESQUIRE**
Attorney for Trustee
Attorney I.D. No. 23081
PO Box 56, 811 Blakeslee Blvd. Drive East
Lehighton, PA 18235
(610) 377-5200, fax: (610) 377-5209
ECF@uslawcenter.com

10-12-10.era.Excel-18100-2.11