UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: **EXCEL STORAGE PRODUCTS, LP,** | : | Chapter 7 |
| Debtor | : | Case No. 5-10-07862 |

| | | |
|---|---|---|
| **WILLIAM G. SCHWAB, Trustee for the** | : | |
| the Estate of Excel Storage Products, LP, | : | |
| Movant, | : | Nature of Proceeding: |
| vs. | : | 11 U.S.C. § 363 |
| **INTERNAL REVENUE SERVICE,** | : | With Lien(s) Attaching |
| **PA DEPARTMENT OF REVENUE,** | : | To Sales Proceeds |
| **PA DEPARTMENT OF LABOR & INDUSTRY,** | : | |
| **CALIFORNIA FRANCHISE TAX BOARD,** | : | |
| **DEL PASO PIPE & STEEL, INC., and** | : | |
| **HUNTINGTON NATIONAL BANK,** | : | |
| Respondents. | : | |

**ORDER GRANTING MOTION TO SELL PERSONAL PROPERTY OF THE ESTATE
FREE AND CLEAR OF LIENS AND ENCUMBRANCES
<u>PURSUANT TO 11 U.S.C. § 363</u>**

After a hearing on February 4, 2011, (the "Sale Hearing"), (A) upon due notice to all persons and parties entitled thereto; (B) upon consideration of the *Motion to Sell Personal Property of the Estate Free and Clear of Liens and Encumbrances* (the "Sale Motion"); pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (E) based upon proceedings held during the auction on the sale conducted by the Trustee (the "Auction"), (F) based upon pleadings and proceedings of record at the Sale Hearing, and (G) upon determination of this Court, for good and sufficient cause shown, that consummation of the sale of all of the properties, assets and property rights, tangible or intangible, used in or useful to the operation of the business conducted by the Debtor in East Stroudsburg, Pennsylvania, Brookings, South Dakota, Cadiz, Ohio and Lodi, California to **PAF Investments, LLC** (the "Purchaser"), pursuant to that certain Asset Purchase Agreement dated as of February 4, 2011 by and between the Purchaser and William G. Schwab, in his capacity as the duly appointed Chapter 7 Trustee of the estate of the Debtor (a copy of which is attached as Exhibit A hereto, the "Asset Purchase Agreement"), is in the best interests of the Debtor, its bankruptcy estate, creditors and other parties in interest, this Court makes the following findings of fact:

A.  The Trustee filed the Sale Motion, pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, seeking authorization and approval to consummate the sale of the Debtor's assets located in:

1

East Stroudsburg, Pennsylvania; Cadiz, Ohio; Brookings, South Dakota; and Lodi, California.

B. Further, by the Sale Motion, the Trustee seeks authorization and approval for the Purchaser to purchase, in accordance with the terms and provisions and subject to the conditions of the Asset Purchase Agreement, certain of the Debtor's assets consisting of all of Debtor's right, title and interest in and to all of the properties, assets and property rights, tangible or intangible, located on or in, which were used in or useful to the operation of the business conducted by the Debtor in East Stroudsburg, Pennsylvania, Brookings, South Dakota, Cadiz, Ohio and Lodi, California. The term Purchased Assets as used herein shall mean the Purchased Assets as defined in the Asset Purchase Agreement, including but not limited to, the equipment, machinery and accessories and other personal property identified on Schedule 1(a) to Asset Purchase Agreement and included in Exhibit A to this Order.

C. The Trustee has complied with all applicable procedures for providing notice of the sale of the Purchased Assets, timely and sufficient notice of the Sale Motion and Sale Hearing was provided and such notice was properly served on all required persons and entities, including, but not limited to, all creditors, all parties with liens against or security interests in any of the Purchased Assets, all local, state and federal taxing authorities, all parties requesting notice in accordance with the Bankruptcy Rules, and all persons claiming any interest in or related to the Purchased Assets.

D. Proper, timely, adequate and sufficient notice of the Auction and the Sale Hearing, and the Asset Purchase Agreement has been provided in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1 and such other applicable sections of the Bankruptcy Code, Bankruptcy Rules and Local Rules. Such notice was proper, sufficient, and appropriate under the particular circumstances, and no other or further notice of the Sale Motion, Auction and the Sale Hearing is or shall be required. In compliance with Local Rule of Bankruptcy Procedure 6004-1, the Trustee advertised the Sale Motion, Auction and Sale Hearing. The auction was conducted in a non-collusive, fair, and good faith manner and the auction process afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.

E. The notice fully and accurately discloses the complete terms of the proposed sale and the justification for the proposed sale.

F. The sale of the Purchased Assets pursuant to the terms and conditions set forth in the Asset Purchase Agreement represents the valid and reasonable exercise of the Trustee's business judgment. The Trustee has demonstrated good, sufficient and sound business purpose and justification, pursuant to sections 105 and 363 of the Bankruptcy Code, for the sale of the Purchased Assets.

G. The terms and conditions of the Asset Purchase Agreement are non-collusive, fair and reasonable. The Asset Purchase Agreement:

(i) was negotiated, proposed and entered into without collusion, in good faith, from arm's length bargaining positions; and

(ii) constitutes the highest and best offer for the Purchased Assets. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

H. The consideration to be paid by the Purchaser for the Purchased Assets under the Asset Purchase Agreement in the form of a credit bid (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a higher and better recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

I. The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Debtor. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger or de facto merger of Purchaser and the Debtor.

J. The Purchaser has never had any control over the Debtor or control over the Debtor's operations, and has never participated in the Debtor's management.

K. The Purchaser has never been an owner, operator or person in control of any of the Debtor's facilities and the Purchaser does not lease or own any of the Debtor's locations, it has not and will not operate any of the Debtor's facilities, it has not arranged for treatment or disposal of any hazardous materials and it has not accepted any hazardous materials for transport with respect to the Debtors operations or its locations.

L. The Trustee may sell the Purchased Assets free and clear of any and all liens, encumbrances, claims, demands, rights, interests, debts, or commitments, whether absolute or contingent, matured or unmatured, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, senior or subordinated, known or unknown, including, without limitation, any claims predicated upon any theory of successor liability or any similar theory and any claim under the Collective Bargaining Agreement between the Debtor and Local 108, Waste Material Recycling and General Industries, L.I.U.N.A. dated December 17, 2008 but effective January 1, 2008 (collectively, the "Liens and Liabilities"), regardless of how or when any such Liens and Liabilities may have arisen or arise, because:

(i) Applicable non-bankruptcy law permits such a sale;

(ii) Bankruptcy law permits such a sale;

(iii) Each applicable creditor consents to the sale as proposed in the Sale Motion, and if any creditor has objected, such objection is overruled or has been

withdrawn;

(iv) If such Liens and Liabilities is or are a lien, the aggregate value to be received in consideration of the sale of the Purchased Assets exceeds the value of any liens upon and security interests in the Purchased Assets;

(v) Applicable creditors could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Liens and Liabilities; and/or

(vi) This Court, pursuant to its equitable powers and jurisdiction, has the power and authority to authorize and effectuate the sale of the Purchased Assets to the Purchaser free and clear of all Liens and Liabilities.

M. The transfer of each of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, which transfer will vest the Purchaser with the Purchased Assets free and clear of Liens and Liabilities.

N. The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser were not free and clear of all Liens and Liabilities.

O. The Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

P. The Purchaser has available (or will have available on the Closing Date) all necessary resources required to consummate the Asset Purchase Agreement in accordance with its terms.

Q. The Trustee and the Purchaser have represented that, as of the date of the Sale Hearing, neither is aware of any material breaches of any provisions of the Asset Purchase Agreement.

R. Neither the Trustee nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under Bankruptcy Code section 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person and the consideration provided by the Purchaser for the Purchased Assets was not controlled by any agreement among the bidders.

S. Consummation of the Asset Purchase Agreement is in the best interest of the Debtor's creditors and its bankruptcy estate.

T. A reasonable opportunity to bid, to object or to be heard regarding the relief requested in the Sale Motion has been offered to all interested parties.

U. The sale of the Purchased Assets to the Purchaser is in good faith and the Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and in accordance with In re Abbotts Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986). The

Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

NOW, THEREFORE, based upon the findings of fact as set forth above and the pleadings and proceedings of record at the Sale Hearing, this Court renders conclusions of law as follows:

AA. This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334. Venue of this bankruptcy case in this Court is proper pursuant to 28 U.S.C. § 1409. The Sale Hearing constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). The statutory predicates for the requested relief are, *inter alia,* sections 105, 363 and 365 of the Bankruptcy Code.

BB. No other or further notice of the Sale Motion, the Auction, the Sale Hearing or the entry of this Order is necessary.

CC. The Notice of the Sale Motion, the Auction and the Sale Hearing was timely served upon all creditors and other parties in interest upon whom service is required, and the notice satisfies the provisions of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, Local Rule 6004-1 and any other requirements of due process.

DD. The Notice of the Sale Motion, the Auction and the Sale Hearing served upon creditors and other parties in interest adequately discloses the business justification for consummation of the Asset Purchase Agreement and all ancillary agreements with the Trustee, which execution and delivery of the Asset Purchase Agreement and ancillary agreement is required by the Purchaser as a condition precedent to closing, and the consequences of such consummation for creditors and other parties in interest and for the bankruptcy estate.

EE. The Trustee has demonstrated sufficient business reasons for the sale of the Debtor's assets pursuant to the Asset Purchase Agreement and the consummation of the Asset Purchase Agreement is in the best interests of the Debtor's creditors and the bankruptcy estate.

FF. Without a sale free and clear of all Liens and Liabilities, the sale of the Purchased Assets could not be consummated, or could be consummated only upon terms substantially less favorable to the Debtor's estate.

GG. Sufficient cause and justification exist under sections 105(a), 363 and 365 of the Bankruptcy Code to grant the Sale Motion.

HH. The sale is in good faith and the Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and in accordance with In re Abbotts Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986). The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

II. In the event the parties to the Asset Purchase Agreement consummate the transactions contemplated hereby while an appeal of this Order is pending, the Purchaser shall be entitled to rely upon the protections of section 363(m) of the Bankruptcy Code (without limiting in any way the availability of general "mootness" arguments), absent any stay pending appeal granted by the Closing Date (as defined in the Asset Purchase Agreement) by a court of competent jurisdiction.

JJ. Accordingly, the Purchased Assets may and shall be sold free and clear of all Liens and Liabilities, regardless of how or when any such Liens and Liabilities may have arisen or arise, because:

    (i) Applicable non-bankruptcy law permits such a sale;

    (ii) Bankruptcy law permits such a sale;

    (iii) Each applicable creditor consents to the sale as proposed in the Sale Motion, and if any creditor has objected, such objection has been overruled or has been withdrawn;

    (iv) If such Liens and Liabilities is or are a lien, the aggregate value to be received in consideration of the sale of the Purchased Assets exceeds the value of any liens upon and security interests in the Purchased Assets;

    (v) Applicable creditors could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Liens and Liabilities; and/or

    (vi) This Court, pursuant to its equitable powers and jurisdiction, has the power and authority to authorize and effectuate the sale of the Purchased Assets to the Purchaser free and clear of all Liens and Liabilities, and because such Liens and Liabilities shall attach to the proceeds of the sale of the Purchased Assets to the same extent, with the same validity, in the same order of priority, and with the same degree of perfection (if applicable) as existed on the Petition Date.

KK. The consummation of the sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

LL. There is no law which prohibits or restricts assignment, conveyance or transfer of any of the Purchased Assets to the Purchaser.

NOW, THEREFORE, based upon the findings of fact and conclusions of law set forth above and the pleadings and proceedings of record at the Sale Hearing,

**IT IS HEREBY ORDERED:**

1. The Sale Motion is granted in its entirety. The Asset Purchase Agreement (including all ancillary agreements to which the Trustee or the Debtor is a party) is hereby approved in all respects and the sale of the Purchased Assets is hereby authorized under, *inter alia,* sections 105(a), 363(b) and 365 of the Bankruptcy Code. To the extent any objections to the Sale Motion have not been withdrawn, waived or resolved, such objections are hereby overruled.

2. The findings of fact and conclusions of law set forth above shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed; and to the extent any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

3. The Trustee is hereby authorized and directed, on behalf of the Debtor, to execute, deliver and perform the Asset Purchase Agreement and all agreements and documents (each in form and substance acceptable to the Purchaser and its counsel) contemplated thereby, including, without limitation, (i) delivery of a customary bill of sale for the Purchased Assets; (ii) titles for any motor vehicles included among the Purchased Assets (containing any assignments thereof or endorsements or signatures thereon as may be necessary or appropriate under applicable law to transfer such titles, and ownership of such vehicles, to the Purchaser), all of which titles are and shall be free and clear of all Liens and Liabilities; and (iii) such other documents and other instruments of transfer and conveyance as may reasonably be requested by the Purchaser. The Trustee, on behalf of the Debtor, is hereby further authorized and directed to sell all of the Debtor's right, title and interest in and to the Purchased Assets to the Purchaser, free and clear of any and all Liens and Liabilities, in accordance with the terms of the Asset Purchase Agreement. The Asset Purchase Agreement is, and shall be, binding upon and enforceable against the Trustee, the Debtor and its estate, according to its terms

4. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code and this Court's equitable powers and authority, the Trustee shall convey and deliver to the Purchaser good, marketable and transferable title to each of the Purchased Assets in which it has an interest at the Closing under the Asset Purchase Agreement, and the Trustee's and/or the Debtor's conveyance and delivery of title to the Purchased Assets hereby is and shall be free and clear of all Liens and Liabilities, including, without limitation, all security interests, if any, in and all liens upon the Purchased Assets, with all Liens and Liabilities to attach to the proceeds of the sale.

5. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtor's interests in the Purchased Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

6. A copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Assumed Liabilities.

7. If any person or entity which has filed statements or other documents or agreements evidencing liens on, or interests in, all or any portion of the Purchased Assets shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Trustee is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

8. Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, all persons and entities, including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding claims or interests of any kind or nature whatsoever, including the Liens and Liabilities, in or against the Debtor or any of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, fixed, liquidated or unliquidated, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting any claims or interests against the Purchaser, its successors or assigns, its property, or the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its successors, assets, properties or related entities; (iii) creating, perfecting, or enforcing any lien or other claim against the Purchaser, its successors, assets, properties or related entities; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, or its successors or related entities; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets

9. Except as otherwise expressly provided for in this Order or the Asset Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, the Purchaser shall not be liable for any claims, Liens and Liabilities against the Debtor or any of its predecessors or affiliates, and the

Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Debtor and any related entity, any liabilities for the violation of, or required remediation under any environmental laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing.

10. Purchaser, with respect to any properties owned, leased, occupied or otherwise used by the Debtor, shall not be in any way liable or responsible for, nor shall it have any obligation with respect to any and all direct or indirect, vested or contingent, known or unknown and suspected or unsuspected claims, demands, actions, causes, suits and damages whatsoever arising from or related to: (i) the release at any such property prior to the Closing Date of any materials which under applicable Federal, state or local law require special handling in use, generation, collection, storage, treatment or disposal including without limitation any flammable substance, explosive, radioactive material, hazardous material, hazardous waste, toxic substance, solid waste, pollutant, contaminant, any toxic chemical or other substance related to industrial, commercial or institutional activities, asbestos, gasoline, diesel fuel, oil and other petroleum products, polychlorinated biphenyl, radon, formaldehyde, lead containing materials or any other related material or substance specified in or regulated by any applicable Federal, state or local laws regulating pollution, environmental protection or the protection of the public health or welfare (each such substance a "Special Material"), (ii) the release, of any Special Materials treated, stored, transported, handled, generated or disposed of by or on behalf of the Debtor, (iii) any claim against the Debtor that it has failed to comply with any and all applicable Federal, state or local laws, statutes, ordinances, regulations or standards relating to any pollution, environmental protection, protection of the public health and welfare from any Special Materials, or any licensing, regulation or authorization for the manufacture, use, handling, packaging, storing, transporting, or disposing of any Special Materials.

11. The Purchaser has given substantial consideration in the form of its credit bid under the Purchase Agreement for the benefit of the Trustee, the Debtor's estate and its creditors. The consideration in the form of a credit bid is hereby approved and in no event shall the purchaser be required to pay any further consideration, including, but not limited to, any amount in cash. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Liens and Liabilities pursuant to this Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens and Liabilities against or interests in, or claims against any of the Debtor or any of the Purchased Assets. The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

12. The consideration provided by the Purchaser to the Trustee pursuant to the Purchase Agreement for the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia

13. The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

14. The Trustee is authorized to execute and deliver, on behalf of the Debtor, such documents, take or perform such acts, and do such other things as may be necessary to effect and carry out the provisions of the Asset Purchase Agreement, all of the transactions related thereto and this Order.

15. Any dismissal or conversion of this case shall have no effect upon the rights of the Purchaser under or in connection with the Asset Purchase Agreement or this Order, and the Purchaser shall be entitled to all of the rights and benefits afforded to it under (i) the Asset Purchase Agreement, (ii) the instruments and documents executed or to be executed in connection with or pursuant to the Asset Purchase Agreement, and (iii) this Order, notwithstanding any such dismissal. The Asset Purchase Agreement and this Order shall be binding upon and enforceable against any successor trustee appointed in this case or in any case to which this case may be converted. Each provision of this Order is a material inducement to the Purchaser to consummate the transactions contemplated by the Asset Purchase Agreement and, therefore, the provisions of this Order are and shall be non-severable.

16. The Trustee will provide Purchaser with, or arrange for Purchaser to have full and unfettered access to and use the Debtor's leased properties in East Stroudsburg, Pennsylvania, Brookings, South Dakota and Lodi, California and the Debtor's property in Cadiz, Ohio to, *inter alia*, prepare, sell and remove any assets purchased at the sale and to conduct auctions at any such location for no less than 90 days subsequent to the Closing Date. The Trustee shall provide Purchaser with access to the Cadiz, Ohio location free of charge for 90 days from the Closing Date provided that Purchaser shall be required to reimburse the Trustee for the costs of utilities after the Closing Date incurred while it is in possession of the Cadiz, Ohio location. Purchaser shall have no liability for any expenses, including for utilities, prior to the Closing Date.

17. Except as otherwise provided in the Settlement Agreement dated January 28, 2011 among the Purchaser, Trustee and Huntington National Bank, Purchaser shall not have any liability or obligation for any costs, rent or expenses related to the Debtor's leased properties in East Stroudsburg, Pennsylvania, Brookings, South Dakota and Lodi, California. Notwithstanding that Purchaser shall have access to and use the

Debtor's leased properties in East Stroudsburg, Pennsylvania, Brookings, South Dakota and Lodi, California and the Debtor's property in Cadiz, Ohio, Purchaser shall not be deemed to be a lessee or in possession of any such real properties.

19. Trustee shall be responsible for the payment of all transfer, stamp, sales, use and certain other taxes, and there shall be a waiver of so called "bulk-sales" laws in all necessary jurisdictions.

19. This Court retains sole and exclusive jurisdiction to resolve any and all matters or disputes arising under or relating to the Asset Purchase Agreement (including, without limitation all post-closing obligations thereunder), the sale of the Purchased Assets, the administration of the sales proceeds by the Trustee, the implementation, interpretation or enforcement of this Order, and the relief and protection afforded to the Purchaser by this Order, provided that in the event the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this clause or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

20. This Order shall be effective and enforceable upon entry and the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) is hereby waived.

21. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale

22. The failure specifically to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

By the Court,

_____
Robert N. Opel, II, Bankruptcy Judge
(BI)

Dated: February 4, 2011